## CONTINUATION

I, Kallin Garza, declare the following under penalty of perjury:

**INTRODUCTION, AGENT BACKGROUND, AND PURPOSE OF THE WARRANT**

1.      The facts of this case, as more fully detailed below, reveal that Elias Escobar-Santos, a native and citizen of Mexico, was previously removed from the United States, and later reentered the United States without permission at an unknown date.

2.      Title 8, United States Code, Section 1326(a) criminalizes reentry without permission of aliens who have been previously removed. The elements of the offense are that: (1) the person is an alien; (2) the person was removed from the United States; (3) the person is thereafter found in the United States; and (4) the person did not obtain permission from the Attorney General or Secretary of the Department of Homeland Security to reapply for admission. The offense is punishable by up to two years in prison. 8 U.S.C. § 1326(a).

3.      I, Border Patrol Agent (BPA) Kallin Garza, am a United States Border Patrol Agent with the United States Department of Homeland Security, United States Border Patrol.  I have been employed in this capacity since June 13, 2022. Currently, I am assigned to the Sault Ste. Marie Border Patrol Station. As part of my duties as a Border Patrol Agent, I am authorized to investigate violations of laws of the United States, including violations pertaining to the reentry of removed aliens, in violation of 8 U.S.C. § 1326(a) Reentry of Removed Aliens. I graduated from the Federal Law Enforcement Training Center's (FLETC) Training Program, where I was trained in immigration law.

1

4.      This continuation contains information necessary to support a finding of probable cause to charge ESCOBAR-Santos with a violation of 8 U.S.C. 1326(a), which makes it a crime for any alien that has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter enters, or is at any time found in, the United States.

5.      The facts set forth herein are based upon my personal knowledge as well as information provided by other law enforcement officers to include Border Patrol Agents and records checks of law enforcement databases. I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause.

FACTS ESTABLISHING PROBABLE CAUSE

6.      I have reviewed the official immigration file relating to ESCOBAR-Santos, which attests to the following:

a.  On February 24, 2022, ESCOBAR-Santos flew into the United States at the Hartsfield-Jackson Atlanta International Airport in Atlanta, GA, having flown from Licenciado Benito Juarez International Airport in Mexico City, Mexico. ESCOBAR-Santos came to the United States with a B2 visitor visa that allowed him to enter but not work in the United States. However, immigration authorities issued ESCOBAR-Santos alien number 240 460 989 and served him with a Form I-860 Notice and Order of Expedited Removal after he admitted that he intended to seek employment in the United States without authorization.  During questioning, ESCOBAR-

2

Santos admitted to being a Mexican citizen and not having citizenship from any other country.

b. On February 25, 2022, ESCOBAR-Santos was removed from the United States back to his native country of Mexico through the Hartsfield-Jackson International Airport Port of Entry.

7. On October 7, 2025, the Sault Sainte Marie Border Patrol Station (SMM) received a call from Michigan State Police (MSP) Motor Carrier Officer (MCO) Jacob Lauer regarding three male subjects present during a vehicle stop that occurred at a rest stop north of the Mackinac Bridge in Mackinac County. MCO Lauer stopped a commercial vehicle bearing Michigan registration "ETA 9138" pulling a trailer bearing Ohio registration "TUA 2470" for a commercial vehicle inspection. The three male subjects could only speak in the Spanish language. MCO Lauer provided SMM agents with the three male subjects biographical information, including ESCOBAR-Santos's biographical information. SMM agents conducted record checks on ESCOBAR-Santos, which revealed that he was illegally present in the United States. Border Patrol Agents (BPAs) Jefferey Warholik and Ryan Hall and Watch Commander (WC) Benjamin Volz responded to the location of the vehicle stop. While travelling to the stop location, Volz was notified by MCO Lauer that MCO Lauer had completed his vehicle stop and had deemed the commercial vehicle out of service due to commercial vehicle violations. Upon arrival at the vehicle stop, the BPAs conducted an immigration inspection of the subjects. ESCOBAR-Santos admitted to having illegally entered the United States without obtaining any immigration documentation allowing him to remain to in the

3

United States legally.

8.      ESCOBAR-Santos was arrested and transferred to SMM for further processing.  ESCOBAR-Santos was fingerprinted and photographed.  These images were entered into the Automated Biometric Identification System (IDENT) and the Integrated Automated Fingerprint Identification System (IAFIS).  ESCOBAR-Santos's fingerprints from October 7, 2025, matched the fingerprints entered into IAFIS from his February 2022 encounter with immigration authorities in Georgia.  The record checks did not provide any evidence that ESCOBAR-Santos legally entered the United States or had been issued any legal immigration document to allow him to enter or remain in the United States.

9.      Review of the alien file for ESCOBAR-Santos and queries in U.S. Border Patrol computer databases confirm no record exists of ESCOBAR-Santos obtaining the express permission from the Attorney General or the Secretary of the Department of Homeland Security to reenter the United States following his last removal

CONCLUSION

10.     Based on my training and experience as a Border Patrol Agent and the information contained in this continuation, there is probable cause to believe that Elias ESCOBAR-Santos reentered the United States after removal without the permission of the Attorney General or Secretary of Homeland Security, in violation of U.S.C. § 1326(a), which makes it a crime to reenter the country following removal without permission of the Attorney General.